Our first case, Piedmon v. Joshua Hedrick, 5-15-0444. Y'all are ready. You may proceed. May it please the Court. Counsel. Good afternoon. On behalf of the Office of the State Appellate Defender, my name is Mariah Shaver and I represent Mr. Joshua Hedrick. Mr. Hedrick's case should be reversed and remanded for a new trial. The State committed reversible error by cross-examining Mr. Hedrick about his prior forgery conviction. Can you speak up? Yes, Your Honor. Sorry about that. The only contested issue in this case was whether or not Mr. Hedrick was acting in self-defense. That issue hinged on the credibility of Mr. Hedrick's testimony that he was defending himself and Mr. Cohen's testimony that he was not. Because the improper impeachment harmed Mr. Hedrick's credibility in a case where his credibility was the key issue, the error tipped the scales of justice against him. To determine whether or not cross-examining Mr. Hedrick about his prior conviction was reversible error, we must first determine if, in fact, it was error. Because an error did occur, the next step is to assess whether that error deprived Mr. Hedrick of substantial justice or influenced the determination of his guilt. Because it did, and because this error was not preserved, the final step is deciding if the error can be reviewed as plain error. Because the State has conceded that cross-examining Mr. Hedrick regarding his prior conviction was error, our analysis begins with the second step of determining if this error deprived him of substantial justice or influenced the determination of his guilt. In this case, the State had to prove that Mr. Hedrick knowingly and without legal justification caused great bodily harm to Mr. Cohen. Mr. Hedrick presented a defense of self-defense that made the only contested issue in this trial whether he was legally justified in using force against Mr. Cohen. If the jury believed Mr. Hedrick's testimony that Mr. Cohen started the altercation, it could have found that he was justified in using force to defend himself. Only Mr. Hedrick and Mr. Cohen were present when the altercation started. Each of them testified that the other started the fight. The jury heard from Mr. Cohen that without provocation, Mr. Hedrick turned the radio up, stood over him, and started hitting him. Mr. Cohen also testified that he had spent four years in prison on an unlawful restraint case for holding a man down to the floor and repeatedly striking him. The jury heard from Mr. Hedrick that Mr. Cohen, who had been drinking, stood over him, refused to leave his home, and then swung at him. Neither account was more fanciful than the other. And, as Officer Stanley testified, there was no evidence disproving or corroborating either version of events, making the issue in this case strictly one of witness credibility. Based on the evidence presented regarding who the initial aggressor was, had the jury not improperly heard that Mr. Hedrick testified that he had been convicted of a crime of dishonesty, it may have credited his testimony over Mr. Cohen's. Our Supreme Court has repeatedly held that there is nothing more damaging than compelling a defendant to testify that he is a criminal or has been convicted of a crime. To make matters worse, in this case, Mr. Hedrick was forced to testify about his prior conviction for a crime of dishonesty. At what point in the examination was he asked this question? Was it in the middle, the beginning, the end? Remember? Your Honor, I apologize. I don't recall. I know it was obviously during cross-examination. I apologize. I don't recall. I can check the record and get back to the Court with that. No, that's okay. Because the determining factor in this case was whether the jury credited Mr. Hedrick's testimony over Mr. Cohen's, anything that unfairly harmed his credibility deprived him of substantial justice. And, likewise, anything that harmed his credibility would have influenced the determination of his guilt. And even though this issue was not preserved, it can be reviewed under either prong of the Plain Error Rule. The first step in a Plain Error Review is deciding if there was an error. Again, the State has conceded error occurred in this case, so we move on to determining if the error can be reviewed under the first prong of the Plain Error Rule. Under the first prong, we look at whether the evidence was so closely balanced that the error threatened to tip the scales of justice against Mr. Hedrick. The inquiry is not how substantial the error was, but whether the evidence was closely balanced. Likewise, the issue is not whether the State presented sufficient evidence to establish guilt, but whether the evidence presented was closely balanced. The error in this case did tip the scales against Mr. Hedrick for the same reasons that it deprived him of substantial justice or influenced the determination of his guilt. The crux of this case was whether or not Mr. Hedrick was legally justified in the use of force against Mr. Cohen. Only Mr. Cohen and Mr. Hedrick were present when the altercation started, and both testified that the others started the fight, making credibility the crux of this case. There was no evidence disproving Mr. Hedrick's version, making the evidence in this case a closely balanced one of witness credibility. Because the determining factor in this case was whether the jury credited Mr. Hedrick's testimony over Mr. Cohen's, anything that weighed against his credibility tipped the scales against him. Forcing Mr. Hedrick to testify that he had been convicted of a crime of dishonesty unquestionably tipped the scales against the jury finding his testimony credible and as reversible as first prong claim error. Even if this court finds that the evidence in this case was not closely balanced, this error can be reviewed as second prong claim error because a clear and obvious error occurred and the error was so serious that it affected the fairness of the trial and challenged the integrity of the judicial process. For the same reasons that the error deprived Mr. Hedrick of substantial justice or influenced the determination of his guilt, forcing him to testify about his prior conviction for a crime of dishonesty in a case that was completely determined by his credibility affected the fairness of his trial and challenged the integrity of the judicial process and is reversible as second prong claim error. Turning to our second argument, if this case is not remanded for a new trial, it should be remanded for new post-trial proceedings. Defense counsel advised the trial court that a conflict had developed between himself and Mr. Hedrick when the ARDC required counsel to respond to Mr. Hedrick's complaint. The adversarial relationship that was created by counsel having to respond to the complaint amounted to a per se conflict, a new counsel should have been appointed. Even if this court does not find that a per se conflict existed, the case should be remanded for a preliminary inquiry into the basis of Mr. Hedrick's allegations to determine if an actual conflict existed. The trial court, at the least, had a duty to inquire into the nature of the allegations when the possibility of the conflict became apparent. And if there are no questions, we would ask this court to reverse and remand for a new trial because Mr. Hedrick was deprived of substantial justice and the determination of his guilt was influenced by the state's improper cross-examination. Or in the alternative, we would ask this court to remand for the appointment of new counsel and new post-trial proceedings, or at the least, for a preliminary inquiry into the basis of Mr. Hedrick's ARDC complaint. Thank you. May I introduce the court? Counsel, my name is Sharon Shanahan and I represent the people of the state of Illinois. I'm going to ask you a couple of questions. I'm going to ask you a couple of questions. I'm going to ask you a couple of questions.   I'm going to ask you a couple of questions. First, you said she saw him in the trailer or made a second, she said. But anyway, she was moving all around in her testimony. Well, actually, her testimony was fairly consistent. It was a statement that the defendant directed her to go to the police station and get statement forms. This is 54 days after the altercation and bring them back. And she brought them back and they both filled them out and then were submitted to the court. I believe that Jamie's testimony, number one, at trial was very consistent, which was that she never went in the house, she never saw the defendant. But that makes it even more an issue of credibility between the two gentlemen. Well, honestly, we don't have a witness. Except that it actually lends less credence to the defendant's testimony because he said she was there. And she saw it and she wasn't there. But she had a statement that said she was there. That's right. And she changed that statement at trial. I mean, this seems to be a he said, she said. Well, I think if you look at how her testimony and the testimony of Officer Stanley contradict the defendant's testimony and corroborate the victim's testimony, I don't think it is he said, she said. What do you mean by that? I mean, they weren't present. So how do they corroborate the defendant's story? Well, for example, I mean, this is a credibility thing. That's exactly right. And anything that makes the defendant less credible weakens his position. Anything that makes the. I'm sorry. Anything that makes the victim's testimony more credible. So the standard that we have is not who wins, really, right? Correct. But it is not, is the evidence close? And Sebi has been misquoted so many times by just saying, well, if the evidence is close, then it wins. That's not what Sebi says. Sebi is directly quoting from People v. Herron, which says if the evidence is so closely balanced that the error alone threatened to tip the scales of justice against him. It's not just close. It's so closely balanced that the error alone severely threatened to tip the scales of justice against him. That's why this is not just a he said, she said case. Prior to Sebi in this old case of People v. Nelson, the controlling question once you have this error, and I think you've referenced it in your briefs, is has the defendant been deprived of substantial justice or has it influenced the determination of his guilt? Correct. And how can you, I mean, People v. Nelson was one question in a drug offense, and the court reversed because it was a credibility issue. I don't feel like I can answer that question without reading Nelson. I would be glad to do that. No, no, it's okay. I think what we need to go back to, well, first of all, let me very quickly go through some of the contested evidence. The defendant says Jada's coming in the door and saw Mr. Cowan hit the defendant. Jada said no, I didn't. Jada says when she returned to the house, Mr. Cowan, the victim, was bleeding in the yard. That's exactly what Mr. Cowan said. Here are inconsistencies between both Mr. Cowan and Jada. The defendant says he didn't invite Mr. Cowan over. Both Mr. Cowan and Jada said yes, he did. As to the fight, as to the harm that was caused to this man's eye socket, what do we have? We know they were all hanging out at some point, regardless of who invited who, right? Yes. So what difference does it make who invited who? What matters is when someone's lying, when they're saying I didn't invite him, when he says I didn't send Jada away, when he said I wasn't even dating Jada, when he says she was there and saw this. And none of that is supported. It is contradicted by the record. When someone's- Contradicted by somebody else's testimony. Including the police officer. Well, how could the police officer know who invited who over? He wasn't there. Well, no, but there were- Officer Stanley said that he- that the defendant told him that he pushed Cowan, and that's when the fight started. And that was the defendant telling Officer Stanley. The defendant told Officer Stanley that he drank a lot of vodka that day. The trial said, no, I didn't. But that's, again, confirmed by Jada. When you look at his testimony- So we should look at his lies generally and say they- because he's lying on some things. Well, it certainly impacts his credibility. But that's what the jury determines. And my concern is that clearly the prosecutor should not have done what the prosecutor did. That was error. Even the state concludes that. Yes, but our Supreme Court has stated that reversal is not required unless the error has deprived the defendant of substantial justice or influenced the determination of his guilt. That's exactly what was quoted in People v. Nelson. And as Professor Graham puts it, the error may and most often will be deemed harmless. They were going to find out about this prior crime anyway. I think that's the crucial thing here is should he have done it this way? No. But would they have known? Yes, they would have known. Yeah, but the way it would have been put in would be put in the state's case on a piece of paper, right? And instead, this is the entire questioning. Now, Mr. Hendrick, you've been convicted of a felony before. Is that right? Defendant? Yes, sir. Prosecutor? And that was back in 2010. You were convicted of the offense of forgery. Is that right? Yes. That's it. There's no drawing on it. It's not mentioned in- I mean, clothing argument. I understand. But take it briefer than that. But once you do it incorrectly, then the issue shifts to this. You had it. I don't need to reread it. But, yeah, the issue shifts. Well, it shifts to whether- We have an error, so the issue shifts to substantial harm or injustice, whatever. Substantial justice? Influence, determination of his guilt, or substantial justice. And, again- So we have an error regardless of how big or small it is. But now we have to look at the second problem. Well, we have to look at whether he was denied, deprived of substantial justice. And my point is- Okay. My point is this jury was going to find out that he had the forgery conviction. Thank you. Counsel? Counsel, can you tell me why this two questions caused your client substantial injustice in light of Ms. Shanahan's argument? Yes, Your Honor. And we actually can take that language from the Nelson case that Your Honor was referring to. The basis for the rule that proof of a prior conviction for impeachment is only- I can't hear you. I apologize. Yeah, we got that, Ms. Shanahan. The basis for the rule that Your Honor is talking about- In Nelson, they talk about the basis for the rule that prior conviction for impeachment is only provable through admitting a certified copy in rebuttal. Is that the prejudice to a defendant who is compelled to testify before a jury as to his prior conviction, our Supreme Court has repeatedly held that that's just so unfair that we don't allow it. In Nelson, the court also pointed out that the issue is not the sufficiency of the evidence, but whether in light of the evidence presented, the defendant was prejudiced by the improper question. And as Your Honor pointed out, in Nelson, it was because the timing was at the end of the cross-examination. It was so prejudicial. One question. Yes, Your Honor. And here, while there were only two questions- I'm not disputing what Ms. Shanahan has said that the record represents- This case did completely hinge on credibility. It was- Ms. Shanahan claims that the police officer and the girlfriend, a colleague of the girlfriend- Sure. Proved that your client was a liar. And so the case is not closed. Why is she incorrect about that? Your Honor, I do disagree with that. In this case- There was no dispute that the altercation had occurred and who was involved in the altercation. The only evidence on that issue was the testimony of Mr. Cohen and the testimony of Mr. Hedrick. So the crux of this case was, if the improper cross-examination, making Mr. Hedrick testify improperly about the fact that he had been convicted of a felony for forgery, a crime of dishonesty, if that tipped the scales against him, that's our SEBI closely balanced test. So if the fact that he had been forced to improperly testify that he had been convicted of this forgery conviction, if that would have influenced the jury's perception of his credibility as a witness, and I can't think of anything that would be more influential on a jury's credibility of- a jury's test of the credibility of a witness than them saying, I'm a convicted liar. That's so prejudicial that that's why we have the rule that says you may not cross-examine a defendant about this. That's what tips the scales against him. We're looking at the scales of Mr. Cohen's testimony and Mr. Hedrick's testimony, which is the only evidence that was presented on the issue of who started the altercation, who was the initial aggressor. I know, but what about the argument that you have these two people, and there are other things around them that show your client's a bigger liar than this other guy? Your Honor, that would be a sufficiency of the evidence test, and that is not part of the closely balanced analysis. Closely balanced is, did the scales get tipped by the improper cross-examination? It's asking Mr. Hedrick about his felony conviction or, nonetheless, a crime of dishonesty. Does that tip the scales against, in this case, his credibility as a witness on this key issue? And our position is that it absolutely does. If this isn't an example of what would tip the scales against a witness's credibility, it poses a question of what would be. And in this case, because it was a he-said-he-said situation as to the key issue on who started the altercation, it did tip the scales and, therefore, it is reversible under first-prong claim error. If there are no further questions, we would ask the Court to grant Mr. Hedrick a new trial. Thank you very much. The Court will take another consideration on issues related to the course.